IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **RANDELL KERBY and CHERYL KERBY**, in her individual capacity and on behalf of her minor children, J.R.K. (1) and J.R.K. (2) | No. 2:12-cv-00544-MO |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| **RHIANA SHERIDAN,** in her individual and official Capacity; **JOHN TRUMBO**, in his individual and Official capacity; **UMATILLA COUNTY**, and Oregon Municipality; **JANELLE HINES,** in her individual and official capacity; **GAY DAVIS,** in her individual and official capacity; **HEALTHER SUING-HORNING,** in her individual and official capacity; and **KATHRYN HANSEN,** in her individual and official capacity**,** | |
| Defendants. | |

**MOSMAN, J.**,

Plaintiffs Randell Kerby and Cheryl Kerby, both in her individual capacity and on behalf of her minor children J.R.K. (1) and J.R.K. (2), bring this action against Defendant Gay Davis under 42 U.S.C. § 1983. Plaintiffs allege that Ms. Davis, an Oregon Department of Human Services ("DHS") employee, violated their constitutional right to familial integrity. Plaintiffs move for partial summary judgment against Defendant Davis [168]. I deny Plaintiff's motion. There are still genuine issues of material fact concerning whether or not Ms. Davis's actions were warranted and whether she is entitled to qualified immunity.

1 –OPINION AND ORDER

I.    BACKGROUND

In January of 2011, one of Plaintiffs' adoptive daughters, J.S.K., alleged that Mr. Kerby had sexually abused her. This disclosure was reported to DHS and was investigated by both DHS and the Umatilla County Sheriff's Office. As part of this process, a Protective Action, also referred to as a "safety plan," was put into place. As part of this plan, Mr. Kerby "agreed to remain out of the home until further interviews can be conducted." (Holm Dec. [170] Ex. 1.)

On March 16, 2011, a hearing was held in Umatilla County Circuit Court concerning the safety of J.S.K. During this hearing, J.S.K. was made a ward of the court and committed to the legal custody of DHS. In the court's "Jurisdiction & Disposition Judgment," Judge Pahl checked a box approving the "case plan and the date of achievement," to return J.S.K. to her parents by March 16, 2012. (Holm Dec. [170] Ex. 5 at 4.)

Also on March 16, 2011, a Child Safety Meeting was held at DHS, which Plaintiffs and their attorneys attended. As a result of this meeting an "Ongoing Safety Plan" was created. The Ongoing Safety Plan, which was signed by Ms. Kerby and Ms. Davis, contained a requirement that the living environment be free of dangerous persons and activities. It also included a reference to the (then) pending criminal accusations against Mr. Kerby, indicating DHS likely considered him a "dangerous person." (Van Meter Dec. [131] Ex. C at 25–27.)

On March 17, 2011, DHS issued Mr. Kerby a Notice of Child Protective Services Disposition and Right of Review, commonly referred to as a "Founded Disposition." In the Disposition, Mr. Kerby was notified that DHS had considered the evidence and determined he was responsible for the sexual abuse and exploitation of J.S.K. Mr. Kerby was also advised that "he cannot have contact with minor children until he mitigates the safety concern, regardless of the criminal outcome." Because the Founded

2 –OPINION AND ORDER

Disposition was essentially an administrative adjudication against him, the notice letter also informed Mr. Kerby of his right to review. (Holm Dec. [170] Ex. 6.)

On August 22, 2011, DHS created a "Child Welfare Case Plan," which also stated that Mr. Kerby "cannot have contact with minor children" and that he must "successfully complete sex offender treatment." (Van Meter Dec. [131] Ex. C, pp. 28–46, 35.)

Throughout this time, Mr. Kerby's criminal case was also progressing. Mr. Kerby maintained his innocence. On September 29, 2011, a jury acquitted Mr. Kerby of the sexual abuse charges concerning J.S.K. Just a few minutes later, in the courthouse parking lot, Ms. Davis confronted Mr. Kerby. The parties dispute the exact terms of the conversation, but it is generally alleged that Defendant Davis told Mr. Kerby that despite the acquittal, he could not return home to his two adopted children until he completed a psycho-sexual evaluation.

The Kerbys allege that Ms. Davis's conduct violated their fundamental right to family integrity which is protected by the Due Process Clause of the Fourteenth Amendment. Now, on summary judgment, they argue that no reasonable jury could find otherwise. They argue that Ms. Davis has no defense to her liability, because no reasonable social worker could have believed a court order was in place that prevented Mr. Kerby from returning home to his family. Additionally, the Kerbys argue that no reasonable social worker could have believed that such action was necessary to avert imminent danger of serious injury.

Ms. Davis disputes these arguments, first claiming that the proper standard to review a claim for violation of substantive due process is whether the conduct "shocks the conscience" of the Court. She argues that even if the court does find that a right protected by substantive due process exists in this case, these protections do not extend to those parents who are not deemed "fit." Additionally, Ms. Davis argues her actions were rationally related to the compelling state interest in protecting the children and

therefore not conscience shocking. Finally, Ms. Davis asserts that summary judgment is not proper since she is entitled to qualified immunity. Ms. Davis contends that she reasonably believed she was acting pursuant to a "court ordered safety plan," which she understood to prohibit Mr. Kerby from having contact with his minor children.

## II.    LEGAL STANDARDS

The court shall grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

"The moving party bears the initial burden of demonstrating the absence of a 'genuine issue of material fact for trial.'" *Id*. at 256. The moving party may carry its initial burden on summary judgment by "showing" that the opposing party lacks sufficient evidence to carry its ultimate burden of persuasion at trial. FRCP 56(c)(1)(B); *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). "The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Id*.

In evaluating a motion for summary judgment, a court "must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 150 (2000).

## III.    ANALYSIS

"Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors

from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West,* 223 F.3d 1135, 1139 (9th Cir. 2000). The Kerbys allege that Ms. Davis violated their constitutional right to family integrity when she forbade Mr. Kerby from going home with his family on September 29, 2011. To prove a violation of their constitutional rights, the Kerbys must show that Ms. Davis, acting under color of state law, deprived them of a constitutional right that is clearly established. *See West v. Atkins,* 487 U.S. 42, 48 (1988). If such a constitutional right applies in this case, the next question is, under what standard should Ms. Davis's actions to be judged. Based on that standard of review, if no reasonable jury could find that her actions were warranted and that she is not entitled to qualified immunity, then summary judgment is proper.

    A. Was Ms. Davis acting under color of state law?

Section 1983 claims require a court to ask if the alleged deprivation was committed by a person acting under color of state law. *Anderson v. Warner,* 451 F.3d 1063, 1067 (9th Cir. 2006). A person acts under color of state law if their actions are taken in the performance of their official duties. *Id.* It is generally undisputed that Ms. Davis was acting in performance of her official duties as a DHS employee when she approached Mr. Kerby in the courthouse parking lot. Therefore, Plaintiffs have satisfied one of the requirements for the § 1983 claim.

    B. Does the constitutional right to familial integrity apply in this case?

As discussed in more detail in the qualified immunity section below, the parties dispute the distinct parameters of the constitutional right at issue in this case. What is clear however is that parents and children have a constitutional right "to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). *See also Santosky v. Kramer*, 455 U.S. 745, 745 (1982) (holding that "the fundamental liberty interest of natural parents in the care, custody, and management of their child is protected by the Fourteenth Amendment.").

Defendant argues that this right only extends to those parents who are deemed "fit." Def's Response [173] at 21-25. However the Supreme Court has held that:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child *does not evaporate simply because they have not been model parents* or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs.

*Santosky*, 455 U.S. at 753 (emphasis added). Based on these statements, I disagree with the contention that the Supreme Court has only recognized a fundamental right of a "fit" parent to the care of his or her children. Case law demonstrates that it is "well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. §] 1983." *Lee v. City of Los Angeles,* 250 F.3d 668, 685 (9th Cir. 2001) (internal quotations and citations omitted). Although the parties disagree as to the particular interests at stake in this analysis, on a broader level, it is clear that the right to familial integrity is a fundamental constitutional right protected by substantive due process under the Fourteenth Amendment, and that it applies in cases such as this.[1]

### C. What is the proper standard of review?

Even where the constitutional right to familial integrity applies, it is not an absolute right. *See DeBiaso v. Spitz,* 457 F. Supp. 2d 1213, 1218 (D. Or. 2013), citing *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012). "The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1125 (9th Cir. 1989). The parties spend a great deal of effort arguing what the proper standard of review

---

[1] Defendant attempts a distinction between a right to procedural due process – which may extend to any family subjected to DHS interference – and substantive due process, which would only extend to fit families. Or so the argument goes. But as cases like *Santosky* make clear, both concepts are often in play. The law under the aegis of substantive due process recognizes a fundamental right to familial integrity. Then it cloaks that right, like any other right, with the protections of procedural due process.

should be for this case.  The Kerbys argue that Ms. Davis's actions should be reviewed under strict scrutiny, since a fundamental right has been violated in this instance.  Defendant argues that a rational basis review is proper since Ms. Davis's actions could be rationally related to the compelling state interest in protecting the Kerby children.  I find that neither of these standards is the proper one for purposes of this case.

In *County of Sacramento v. Lewis*, the Supreme Court reiterated the importance of carefully analyzing the nature of a specific due process claim.  The Court found that substantive due process challenges to legislative action must be distinguished from challenges to executive action. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).  Challenges to legislative action typically invoke heightened judicial scrutiny. *Id*.  However, substantive due process challenges to executive actions call for a different "shocks-the-conscience" standard. *Id.*

Although a number of other circuits apply a "shocks-the-conscience" test in cases involving the substantive due process protections of familial integrity,[2] the Ninth Circuit does not.  In *Crowe v. County of San Diego*, the Ninth Circuit explicitly stated, "[t]he standard for deprivation of familial companionship is 'unwarranted interference,' not conduct which 'shocks the conscience.'" 608 F.3d 406, 441 n.23 (9th Cir. 2010).  In that case, plaintiffs argued that police violated their right to family integrity when they wrongfully took two young children into protective custody and wrongfully detained others in the course of a murder investigation. *Id.* at 441. Just as they do here, defendant argued the standard to find a violation of this right was whether the conduct shocked the conscience. *Id.* at 441

---

[2] *See, e.g., Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635–36 (6th Cir. 2007); *Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 21–22 (1st Cir. 2007); *Anthony v. City of New York*, 339 F.3d 129, 142–43 (2d Cir. 2003); *Miller v. City of Philadelphia*, 174 F.3d 368, 374–76 (3d Cir. 1999); *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 294 (4th Cir. 2013) (noting the *Crowe* language, but applying the "shocks the conscience" test); *Silvan W. v. Briggs*, 309 F. App'x 216, 223 (10th Cir. 2009); *Murray v. Earle*, No. 06-50568, 2008 WL 1744257, at *5 (5th Cir. Apr. 11, 2008). Indeed, the First Circuit recently stated that "*Lewis* clarified that the shocks-the-conscience test . . . governs *all* substantive due process claims based on executive, as opposed to legislative, action." *Martinez v. Cui*, 608 F.3d  54, 64 (1st Cir. 2010) (emphasis in original).

n.23. The Ninth Circuit determined that "there [was] no support in the relevant case law" for that assertion. *Id.* The court said, "'[u]nwarranted state interference' with the relationship between parent and child violates substantive due process." *Id.* at 441 (quoting *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) *overruled on other grounds by Hodgers–Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir.1999)). Just last month, the Ninth Circuit repeated this instruction, stating that the "standard for a claim of deprivation of familial companionship is 'unwarranted interference.'" *Sharp v. Stringer*, No. 13-35465, 2015 WL 412251, at *1 (9th Cir. Feb. 2, 2015) (unpublished).

### D. How should this standard be applied to Ms. Davis?

Since this court is bound by decisions of the Ninth Circuit, the proper analysis is whether Ms. Davis's conduct was warranted or not. A review of the relevant case law does not provide many examples to distinguish warranted and unwarranted behaviors in this area. In *McCue v. South Fork Union Elementary School,* the Eastern District of California found that "[i]nterference with the familial relationship is 'unwarranted' when it is effected for the purposes of oppression." 766 F. Supp. 2d 1003, 1008-09 (E.D. Cal. 2011), (citing *Smith*, 818 F.2d at 1420). Additionally, Judge Hernandez in *DeBiaso* found that a DHS employee's removal of a child from his family home following his parents arrest did not constitute unwarranted behavior. *DeBiaso,* 457 F. Supp. at 1218 (D. Or. 2013).

In this instance, Ms. Davis asserts that the March 16, 2011, court order implicitly adopted the conditions that DHS had set forth in various other documents. These include the January "safety plan" in which Mr. Kerby agreed that he would remain outside the home, the "Ongoing Safety Plan" requiring that the Kerby home be kept "free of dangerous persons," and the DHS "Founded Disposition" letter informing Mr. Kerby that "he cannot have contact with minor children until he mitigates the safety concern, regardless of the criminal outcome." (Van Meter Dec. [131] Ex. C at 25–27; Holm Dec. [170] Ex. 6.) Ms. Davis also argues that various documents prepared after the court order support her belief

that, even after the criminal trial, Mr. Kerby was not to have contact with minor children. Finally, Ms. Davis asserts that she "reasonably believed" based on the March 16 court order and the DHS documents cited above that Mr. Kerby was not permitted contact with children until he complied with DHS's directives. As she understood it, her command to Mr. Kerby merely repeated "what had already been communicated to him several times." (Second Davis Dec. [148] at 4.) Ms. Davis suggests that each of these documents and circumstances supports a conclusion that her conduct in the courthouse parking lot satisfies the governing standard.

In response, the Kerbys point out that the March 16 court order itself contained no explicit condition preventing Mr. Kerby from having contact with his children. They assert that Defendant has presented no document contemporaneous with the March 16 order that has the characteristics of a "case plan." They also note that the court did not check a box to indicate that it had incorporated any external documents, suggesting that the court did not mean to do so. In the absence of a contemporaneous document that could be a case plan, the Kerbys argue that the plan approved by the court must be no more than the goal that Mr. Kerby be reunited with his children by March of 2012.

The Kerbys observe that none of the documents Ms. Davis relied upon that existed as of March 16, 2011, are case plans forbidding Mr. Kerby in perpetuity from contact with his children. They also note that the original safety plan was to keep Mr. Kerby out of the home only "until further interviews could be conducted." (Holm Dec. [170] Ex. 1.)

Considering these facts in the light most favorable to Defendant, I find that Ms. Davis's actions could be considered warranted by a jury. Although case law is inconclusive about what kind of behavior should be considered warranted or not, when considering all of the evidence presented in the light most favorable to Ms. Davis, a reasonable jury could find her actions were warranted. If her impressions of these events are to be believed, Ms. Davis had reason to assume that her actions were warranted by

documents that she believed encompassed a court ordered safety plan and that she was merely repeating what had already been agreed to by Plaintiffs in the past. Whether or not her beliefs and actions fall within the realm of "warranted" behavior is a fact dispute that must be left for a jury to resolve. Therefore, I deny Plaintiff's motion for partial summary judgment.

### E.  Are Ms. Davis's actions covered by qualified immunity?

Qualified immunity exists to protect public servants who perform their duties reasonably, while still allowing them to be held liable "when they exercise power irresponsibly." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under this doctrine, government agents are liable only if their conduct "violate[s] clearly established statutory or constitutional rights." *Id.* A right is said to be "clearly established" when a "reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This does "not require a case directly on point"; instead "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, ___U.S.___, ___, 131 S. Ct. 2074, 2083 (2011).

In the Ninth Circuit, qualified immunity involves three essential inquiries: "(1) the identification of the specific right allegedly violated; (2) the determination of whether that right was so 'clearly established' as to alert a reasonable officer to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue." *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991). Courts have discretion to address the prongs out of order. *Pearson*, 555 U.S. at 236.

To prevail on a motion for summary judgment, Plaintiff "must show that the particular facts of his case support a claim of clearly established right." *Sweaney v. Ada Cnty.*, 119 F.3d 1385, 1389 (9th Cir. 1997) (internal quotation omitted). The court must adopt the non-movant's version of the facts

unless "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 378–80 (2007). Given this standard, Plaintiffs have not carried their burden to overcome qualified immunity at this stage.

        **1.** *What is the right at issue?*

As explained above, the right of family integrity is a liberty interest protected under the due process clause of the Fourteenth Amendment. *See Wallis*, 202 F.3d at 1136 (collecting cases); *Santosky*, 455 U.S. at 753; *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925). But that is not enough to end the inquiry. As the Supreme Court instructed in *Ashcroft v. al-Kidd*, the qualified immunity inquiry demands greater specificity. *See al-Kidd*, 131 S. Ct. at 2084. "We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* (citations omitted). Therefore, I must frame the right with regard to the particular conduct in this case.

The parties disagree on this point. The Kerbys state the right at such a level of abstraction that it is virtually unassailable, saying simply that "parents and children have a constitutional right 'to live together without governmental interference.'" (Plfs.' Mot. for Summ. J. [168] at 11 (quoting *Wallis*, 202 F.3d at 1136)). Ms. Davis states the right with such specificity, that it would essentially require a case directly on point to become clearly established. Ms. Davis argues a judgment in favor of Plaintiff requires me to acknowledge the right of allegedly unfit "parents who are the subject of dependency proceedings, or for whom the state has evidence of abuse or neglect, to nevertheless be free from" reminders of preexisting DHS requirements. (Def.'s Resp. to Summ. J. [173] at 24, 29.) Neither of these statements is especially helpful.

11 –OPINION AND ORDER

Plaintiff is correct in describing the basic *nature* of the right of parents not to have DHS interfere with their right to live with their children without a warranted basis for doing so. Drilling down to the required level of specificity, the more correct statement of the right is that of a father who was accused of child abuse, but acquitted of criminal charges, to return home to be with his children unless DHS has a warranted basis, independent of the criminal case, for restraining him from doing so.

### *2. Was that right clearly established?*

It is important to note that the core right to family integrity described in Part III.B of this opinion is very well settled.  For example, it is beyond debate that a state actor cannot seize and detain children from custodial parents without either a prior court order or exigent circumstances. *See Crowe*, 608 F.3d at 441; *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731–32 (9th Cir. 2009); *Wallis*, 202 F.3d at 1136. Outside of this classic situation, however, the level of protection is reduced. *See Brittian v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) (holding that "non-custodial parents with court ordered visitation rights have a [protected] liberty interest" in the companionship and care of their children, but that "[s]uch an interest is unambiguously lesser in magnitude than that of a parent with full legal custody"); *see Burke*, 586 F.3d at 733–34 (extending *Wallis's* protection to parents with only legal custody of a child, but considering the "scope and degree of state interference" with that right).

At the margins, this right is not considered clearly established. A prime example of this is *Meyers v. Contra Costa Department of Social Services*, 812 F. 2d 1154, 1158 (9th Cir. 1987). There, before instituting formal dependency proceedings, a social service worker ordered a parent not to go home until after a judicial hearing which was held three days later. *Id.* at 1156–57. The court said this conduct, "which indisputably involved no physical interference with parental custody, *cannot be said* to have violated clearly established statutory or constitutional rights." *Id.* at 1158 (emphasis added); *see also Campbell v. Burt* 141 F.3d 927, 929 (9th Cir. 1998) (finding it was not clearly established that a

seven day delay in judicial review was unconstitutional). As the Ninth Circuit has said, "the test in *Wallis* is flexible and must take into account the individual circumstances." *Burke*, 586 F.3d at 733.

The question becomes whether or not the right was clearly established as it applies to Ms. Davis's actions. There is a fair argument to be made that it was not clearly established in this context, especially considering the exact contours of the right seemed to elude the State's own attorney at oral argument. But the State never really made that argument, and the arguments the State did make on this point are not enough. As explained before, I roundly reject the contention that this right only applies to parents the State deems "fit." I also disagree with the argument that this right is *solely* one of procedural due process. Ultimately however, it is unnecessary for me to say the right here is "clearly established" given there is still a dispute as to whether a reasonable social worker in Ms. Davis's position could have believed her actions were warranted.

### 3. Could a reasonable officer in Ms. Davis's position have believed her actions were lawful?

Here too, Ms. Davis has raised a triable issue of fact. To prevail on summary judgment, Plaintiff would have to prove that no reasonable social worker in Ms. Davis's position could have believed her actions were lawful. This is a high standard. "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 131 S. Ct. at 2085. Taking the evidence in the light most favorable to Ms. Davis, Plaintiff has not carried this burden.

Under the Ninth Circuit test I am required to apply, a reasonable jury could conclude that Ms. Davis's actions were warranted, or that she reasonably believed they were. Taking the facts in the light most favorable to Ms. Davis, a reasonable jury could find the March 16, 2011, court order incorporated the requirements in the safety plan, supporting her actions. A jury could find that Mr. Kerby voluntarily agreed to stay out of the home, as stated in the January 12, 2011, "Protective Action." Finally, a jury could conclude the Founded Disposition, an administrative adjudication, supported Ms. Davis's actions

even in the face of the criminal acquittal. Given all of these possible justifications that could make her belief objectively reasonable, summary judgment in favor of Plaintiffs is clearly inappropriate.

I also note that Defendant previously moved for summary judgment on the grounds of qualified immunity.[3] Defendant has now, in their response to Plaintiffs' motion, suggested that it would be appropriate for me to grant Ms. Davis qualified immunity at this time. (Def.'s Resp. to Pl.'s Mot. for Summ. J. [173] at 30 n.10.) But that is exactly what I ruled on before.[4] This is because, in ruling on *Defendant's* motion for summary judgment, I am required to flip the analysis; that is, I must view the record in the light most favorable to Plaintiffs. A rational jury could find several factors that would result in an ultimate finding against Defendant on this issue. For example, a jury could find that no court order was in effect at the time of the parking lot incident that would have supported Ms. Davis's actions. A jury could find the Protective Action, safety plan, and Founded Disposition dealt *only* with J.S.K. and gave DHS no authority to prevent Mr. Kerby from going home to J.R.K. (1) and J.R.K. (2). A jury could find the acquittal, along with the evidence adduced at trial undercutting the State's accusations, negated an objectively reasonable belief that Mr. Kerby was a danger to anyone. A jury could conclude that although the state claimed continuing jurisdiction over Mr. Kerby based on the conditions he would need to meet in order for J.S.K. to return home, it was unreasonable to believe J.S.K. would ever return to the Kerby home, making these conditions essentially irrelevant. Finally, a reasonable jury could find that Ms. Davis's order to Mr. Kerby was unwarranted because it was "effected for the purposes of oppression." *McCue*, 766 F. Supp. 2d at 1009. In this light, summary judgment for Defendant was also inappropriate.

While I realize that qualified immunity is usually a question of law to be determined early in litigation, the factual disputes here do not allow that. The Ninth Circuit has explicitly acknowledged this

---

[3] *See* Defendant's Second Motion for Summary Judgment [102], and Memo in Support [103] at 12–16.
[4] *See* my order [152] dated August 14, 2014.

14 –OPINION AND ORDER

possibility. "In some instances, . . . material subsidiary questions of fact regarding an official's conduct, or the information reasonably possessed at the time he acted, will still be genuinely in dispute after full discovery, and summary judgment must be denied." *Romero*, 931 F.2d at 630 n.6 (internal citation and quotation omitted). Two of the major cases on this topic also acknowledge this. *See Wallis*, 202 F.3d at 1138 ("The existence of reasonable cause, and the related questions, are all questions of fact to be determined by the jury."); *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997) ("Whether a social worker reasonably could have believed the Ram children were in imminent danger could well depend upon the testimony concerning the depth and integrity of the two investigations. We conclude, therefore, that genuine issues of material fact preclude summary judgment.").

## IV.    CONCLUSION

As explained above, Plaintiffs have not carried their burden to demonstrate that no genuine issue of material fact exists. A reasonable jury could find the executive action taken by Ms. Davis was warranted under *Crowe*, or that a reasonable social worker could have believed her actions were warranted. Therefore, I deny Plaintiff's Motion for Partial Summary Judgment [168].

DATED this   5th   day of March, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge